# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006- 23CB, MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2006- 23CB,<br><br>Plaintiff,<br><br>v.<br><br>MISSION DEL REY HOMEOWNERS ASSOCIATION; SFR INVESTMENTS POOL 1, LLC,<br><br>Defendants. | Case No. 2:17-cv-02173-RFB-EJY<br><br>**ORDER** |

## I.  INTRODUCTION

Before the Court is Bank of New York Mellon's (BNY) Counter Motion for Partial Summary Judgment (ECF No. 40). For the reasons stated below, the Court grants the motion.

## II.  PROCEDURAL BACKGROUND

BNY filed its Complaint on August 14, 2017, seeking quiet title and declaratory relief that a nonjudicial foreclosure sale did not extinguish its deed of trust on a Las Vegas property. ECF No. 1. On November 9, 2017, Defendant Mission Del Rey Homeowners Association ("Mission Del Rey" or "the HOA") filed a Motion for Partial Dismissal or Alternatively, Motion for Partial Summary Judgment. ECF No. 14. The Court entered a scheduling order on January 31, 2018.

ECF No. 22. Defendant SFR Investments Pool 1, LLC filed a Motion to Dismiss on May 7, 2018. ECF No. 31. Discovery closed on June 29, 2018. ECF No. 28.

On July 13, 2018, the Court denied Mission Del Rey's pending motion without prejudice and issued a stay in the case pending the Nevada Supreme Court's decision on a certified question of law regarding the notice requirements of Chapter 116 of the Nevada Revised Statutes ("NRS") in Bank of N.Y. Mellon v. Star Hill Homeowners Ass'n, Case No. 2:16-cv-02561-RFB-PAL. ECF No. 34. The Nevada Supreme Court published an answer to the certified question on August 2, 2018. SFR Investments Pool 1, LLC v. Bank of New York Mellon, 422 P.3d 1248 (Nev. 2018).

On August 23, 2018, SFR filed a Renewed Motion to Dismiss. ECF No. 35. On August 24, 2018, Mission Del Rey filed a Renewed Motion for Partial Dismissal or Alternatively, Motion for Partial Summary Judgment and joined SFR's Renewed Motion to Dismiss. ECF Nos. 36, 37. On September 13, 2018, BNY filed the instant Counter-Motion for Partial Summary Judgment. ECF No. 40. On October 4, 2018, SFR filed a Motion to Strike BNY's Counter-Motion for Partial Summary Judgment as untimely filed. ECF No. 49. Mission Del Rey responded to BNY's motion on that same day. ECF No. 48. On March 31, 2019, the Court issued a written order lifting the stay. ECF No. 57. The order also granted SFR's Renewed Motion to Dismiss and Mission Del Rey's Renewed Motion for Partial Dismissal/Motion for Partial Summary Judgment in part, finding that any of BNY's claims based on liability created by a statute were time-barred. Id. The order denied SFR's Motion to Strike and granted SFR additional time to respond to BNY's Counter Motion for Summary Judgment. Id. SFR filed its response to BNY's motion on April 22, 2019. ECF Nos. 59, 60. BNY replied on May 20, 2019. ECF No. 62. On July 18, 2019, the Court held a hearing on the Counter Motion. This written order now follows.

**III. FACTUAL BACKGROUND**

The Court makes the following findings of undisputed and disputed facts.

    **a. Undisputed Facts**

///

Linda R. Kabiling and Gil David Kabiling ("borrowers") obtained a $244,395.00 loan from New Freedom Mortgage Corporation to purchase the property at 805 El Cabo Rey Avenue, Las Vegas, Nevada 89081. The loan was evidenced by a note and secured by a deed of trust that was recorded on May 26, 2005. Borrowers further encumbered the property with a second $80,000.00 mortgage from Navy Federal Credit Union on December 12, 2006. The deed of trust was assigned to Plaintiff, which was recorded on October 21, 2011. The property is governed by the Mission Del Rey Homeowners Association and is subject to the HOA's covenants, conditions, and restrictions ("CC&Rs"). The borrowers failed to timely pay the HOA assessments.

The HOA then began the nonjudicial foreclosure sale process under NRS Chapter 116 by recording, through its agent NAS, a notice of delinquent assessment lien on September 20, 2011. Per the notice, the amount due to HOA was $1,524.10. The notice states that it is "in accordance with" the CC&Rs. On November 9, 2011, the HOA, through its agent NAS, recorded a notice of default and election to sell to satisfy the delinquent assessment lien. The notice states the amount due to HOA was $2,507.20, but does not specify whether it includes dues, interest, fees and collection costs in addition to assessments. On December 28, 2011, Bank of America, the loan servicer at the time and BNY's predecessor-in-interest, requested a ledger from the HOA through its agent Nevada Association Services ("NAS").

The HOA, through its agent NAS, did not provide a ledger and did not respond to Bank of America's request.

Miles Bauer used a statement of account for another property within the HOA to determine the superpriority amount. The amount of the periodic assessments for the nine months preceding the notice of lien was $162.00 per quarter. Nine months of common assessments of $162.00 quarterly is $486.00. On January 19, 2012, Bank of America, through its counsel Miles Bauer, tendered $486.00 to NAS. Miles Bauer' business records indicate that NAS refused Bank of America's payment. The HOA, through its agent NAS, recorded a notice of trustee's sale on March 27, 2012.The trustee's sale was scheduled for April 20, 2012.The notice states the amount due to HOA was $3,666.12, which includes reasonable estimated costs, expenses, and advances.

///

Borrowers tendered to the HOA a total of $1,750.00. The borrowers were paying pursuant to a payment plan with NAS, that they later breached.

NAS did not record a new notice of lien after the payments. The HOA, through its agent NAS, recorded a second notice of trustee's sale on September 6, 2013. The trustee's sale was scheduled for September 30, 2013. The notice states that the amount due to the HOA was $4,023.44, which includes reasonable estimated costs, expenses and advances. NAS, on behalf of the HOA, foreclosed on the property on or about September 30, 2013. A foreclosure deed in favor of SFR was recorded October 7, 2013. According to the deed, SFR paid $9,000 at the sale. NAS distributed excess proceeds of $2,652.76 to Navy Federal Credit Union, an expressly junior lienholder to BNY.

### b. Disputed Facts

The Court finds that there are no disputed facts, only disputes as to the legal effect of the circumstances and the admissibility of the evidence supporting these facts.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

/ / /

## V. DISCUSSION

The Court addresses several issues in turn: (1) whether BNY's claims are barred by the applicable statute of limitations; (2) whether BNY has standing to enforce the alleged note and deed of trust; (3) whether BNY may proceed on its theory of tender by both its predecessor-in-interest and the borrowers; and (4) whether the evidence establishes as a matter of law that attempted tender by BNY's predecessor preserved its deed of trust.

### a. Statute of Limitations

For statute of limitations calculations, time is computed from the day the cause of action accrued. Clark v. Robison, 944 P.2d 788, 789 (Nev. 1997). The foreclosure sale occurred on September 30, 2013 and the foreclosure deed in favor of SFR was recorded on October 7, 2013. The Court thus finds that all of BNY's claims began to run on the date of the foreclosure sale as these claims all stem from issues or disputes regarding the sale and its effect. The complaint was filed on August 14, 2017, over three but under four years later.

SFR argues that BNY's claims are subject to a three-year statute of limitations because BNY's equitable quiet title claim is really a claim for statutorily defective foreclosure and based on liability created from a statute. The Court disagrees. In this Court's previous order, the Court noted in a footnote that the timeline for tendering the super-priority lien is codified at NRS 116.31162, but that "[t]he phrase 'liability created by statute' means a liability which would not exist but for the statute." Bank of New York Mellon v. Mission Del Rey Homeowners Association, No. 2-17-cv-02173-RFB-GWF, 2019 WL 1442182 at * 3 n.1 (D. Nev. Mar. 31, 2019). The Court further noted that because quiet title, tender and rejection thereof raise equitable considerations irrespective of the statutory scheme, BNY's claims could be considered timely to the extent that they derived from equitable considerations. Id.; see also Shadow Wood HOA v. N.Y. Cmty. Bancorp., 366 P.3d 1105, 1111 (Nev. 2016) (noting that a "person who brings a quiet title action

may . . . invoke the court's inherent equitable powers to resolve the competing claims to title"); see also Carrington Mortgage Services, LLC v. Tapestry at Town Center Homeowners Association, 381 F.Supp.3d 1289, 1293-94 (D. Nev. 2019)(explaining that under Nevada law a four-year statute of limitations applies to equitable claims).

SFR argues that BNY cannot have a true quiet title claim because it does not have a title interest in the property. But the Nevada Supreme Court has never held that quiet title actions require a party to show it has a title interest in the property, and the quiet title statute under NRS 40.010 does not either. Nev. Rev. Stat. § 40.010 (stating that an "action may be brought by any person against another who claims an estate or interest in real property adverse to the person bringing the action").

### b. Standing to Enforce Note and Deed of Trust

SFR next argues that BNY does not have standing to enforce the note and deed of trust, because the recording of a document does not guarantee the accuracy or authenticity of said document. SFR argues that the possibility of fraud upon the Court, as evidenced in other cases involving motions to substitute parties based upon allegedly defective recorded assignments, mandates that BNY produce the original deed of trust, note, and assignments in order to establish its interest. SFR cites no authority for this position, and the Court is unpersuaded by it. SFR does not produce any evidence suggesting that BNY has attempted to defraud the Court. SFR does not dispute that in addition to disclosing copies of the note, assignment and deed of trust during discovery, BNY also made originals available for inspection. The Court thus does not find that SFR has raised a genuine question as to the authenticity of the original documents. Fed. R. Evid. 1003 (copies are admissible to the same extent as the original "unless a genuine question is raised about the original's authenticity"); see also United States v. Childs, 5 F.3d 1328, 1335 (9th Cir.

1993) (discussing the interplay between Rules 1003 and 1005 of the Federal Rules of Evidence when copies of public records are produced to prove the content contained therein).

### c. Waiver of Borrower Payment

SFR next argues that BNY has waived its ability to bring a theory of tender based on payments made by the borrower. Because BNY raised these issues for the first time in its motion for summary judgment, SFR argues, BNY is precluded from raising an argument regarding borrower payment now. BNY argues that it did not raise homeowner payment for the first time on summary judgment. BNY states that it disclosed NAS's records and deposed NAS's 30(b)(6) witness in May 2018. The records contained a copy of the borrowers' payments. BNY also states that it identified the payments in response to SFR's interrogatories.

The Ninth Circuit has held that a plaintiff cannot raise a new theory at summary judgment. Patel v. City of Long Beach, 564 F.App'x 881, 882 (9th Cir. 2014). As the Ninth Circuit explains, "a complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000). While BNY plead in its complaint that the Bank of America's attempted tender preserved its deed of trust, BNY did not argue that borrower payments served to effect a tender that thus extinguished the superpriority portion of the lien. These are similar, but distinct theories—one alleges attempted tender, while the other alleges that the default to the superpriority portion of the lien was cured by borrower payments. Only one was pled in the complaint. BNY did not amend its complaint to accommodate the borrower payment-tender theory. Thus the Court agrees with SFR that BNY has waived its ability to raise tender with regard to the borrowers' payments.

/ / /

**d. Sufficiency of Evidence to Support BNY's Attempted Tender Claim**

Finally, the Court examines whether BNY has proffered sufficient admissible evidence to support its attempted tender claim as a matter of law. The Court finds that it has.

The super-priority component of an HOA lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the sub-priority component consists of "all other HOA fees and assessments." SFR Investments Pool 1 v. U.S. Bank, 334 P.3d 408, 411 (Nev. 2014). Pursuant to NRS 116.31162, a homeowner has at least 90 days following notice to pay the HOA's super-priority lien before an HOA may proceed to foreclosure sale. See NRS 116.31162; SFR Investments Pool 1, 334 P.3d at 411.

SFR disputes the sufficiency of BNY's evidence supporting the alleged offer and/or rejection of tender. The delivery of tender is supported by an affidavit of Douglas Miles, an employee of Miles, Bauer, Bergstrom and Winters, a copy of the check, and a printout of an internal Miles Bauer database indicating that the check was rejected by NAS. SFR argues that Miles does not claim to have personal knowledge of the alleged delivery of the check to NAS and alleged rejection and that therefore his affidavit is insufficient proof that the check was in fact delivered. But Miles's affidavit details and attaches business records that support the proffer and return of a $486.00 check. Miles further states in his affidavit that he has personal knowledge of Miles Bauer's procedures for creating these records. A person authenticating business records is not required to attest as to the accuracy of every data entry. U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co., 576 F.3d 1040, 1045 (9th Cir. 2009). SFR also argues that because BNY provides no run slip, receipt of copy by NAS, voided check or other documentation other than the business records, the Court must make an inference that the evidence, if produced, would be adverse to BNY. In addition to bizarrely relying on the Nevada Rules of Evidence to support that argument,

- 8 -

rather than the Federal Rules of Evidence, which apply in this Court, SFR misstates the burden of production as required under Rule 56 of the Federal Rules of Civil Procedure. As the Ninth Circuit explains in <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc,</u> a party moving for summary judgment usually bears both the initial burden of production and burden of persuasion. 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. <u>Id</u>. The Court finds that the Miles affidavit and the documents it authenticates have met BNY's initial burden of production. While SFR attempts to introduce evidence that Miles did not have sufficient knowledge of the internal database, SFR has produced no contrary evidence *that NAS did not actually receive the check*, which is the material fact at issue here, and therefore introduces no more than metaphysical doubt as to its receipt.

    The Court also does not find upon the undisputed facts that the tender was insufficient because it was conditional. To the extent the tender was conditional, the Court finds that the conditions were ones on which BNY's predecessor had a right to insist. <u>Bank of America, N.A. v. SFR Invs. Pool 1, LLC ("Diamond Spur")</u>, 427 P.3d 113, 118 (Nev. 2018). The tender was presented with the following condition:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America's] financial obligations towards the HOA in regards to the real property located at 805 El Cabo Rey Avenue have now been "paid in full".

ECF No. 40-7, Exhibit 7-3. The Nevada Supreme Court has expressly held that identical language constitutes a condition upon which a tenderer has the right to insist. <u>Diamond Spur,</u> 427 P.3d at 116–118. The Court thus finds <u>Diamond Spur</u> to be controlling here.

SFR argues that <u>Diamond Spur</u> did not address other impermissibly conditional portions of the

letter accompanying the tender, including a provision stating that any charges related to maintenance and nuisance/abatement were subordinate to the deed of trust. But this is not what the letter states. The provision SFR cites for this proposition states:

> While the HOA may claim a lien under NRS 116.3102 Subsection(1), Paragraphs (j) through (n) of this Statute clearly provide that such a lien is JUNIOR to first deeds of trust to the extent the lien is for fees and charges imposed for collection and/or attorney fees, collection costs, late fees, service charges and interest."

ECF No. 40-7, Exhibit 7-3.

The letter does not say that charges related to maintenance and nuisance/abatement are subordinate to the deed of trust—it refers only to collection costs, late fees, attorney's fees, and service charges—all costs the Nevada Supreme Court has already held are not part of the superpriority portion of the HOA lien. Horizons at Seven Hills v. Ikon Holdings, 373 P.3d 66, 72 & n.8 (Nev. 2016). Furthermore, the language does not constitute a condition upon which tender must be made—it merely provides Bank of America's understanding of the law. The Court thus finds that the letter accompanying the tender in this case is not impermissibly conditional.

The Court finds that the attempted tender in this case served to void the superpriority portion of the lien by the time of the foreclosure sale. Bank of America, N.A. v. Thomas Jessup, LLC Series VII, 435 P.3d 1217, 1220 (Nev. 2019). The foreclosure sale thus did not extinguish the deed of trust.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Bank of New York Mellon's countermotion for summary judgment (ECF No. 40) is GRANTED. The Court grants summary judgment to Plaintiff on its quiet title claim and declares that SFR purchased the property subject to Plaintiff's deed of trust, which continues to encumber the property.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the bond paid in the amount of $500.00, plus any accrued interest, is returned to the legal owner designated in the certificate of cash deposit (ECF No. 29).

**IT IS FURTHER ORDERED** that the Court's finding on the quiet title claim is dispositive of this matter and the Clerk of the Court is instructed to enter judgment and close this case accordingly.

DATED: September 30, 2019

_____
**RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE**